UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIM CORDER, on behalf of his minor child, K.C.,<br><br>Plaintiff,<br><br>v.<br><br>AUTO-OWNERS INSURANCE,<br><br>Defendant. | Case No. 1:26-cv-00114-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Tim Corder's minor daughter, K.C., was injured when a drunk driver crashed into a car in which she was a passenger. Corder submitted a claim for under-insured motorist (UIM) benefits to his insurance carrier, Defendant Auto-Owners Insurance. He says Auto-Owners failed to pay UIM benefits and exercised bad faith in doing so. Corder alleges three claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) bad faith.

Auto-Owners moves to dismiss all three claims. The Court will deny the motion to dismiss the first claim but will grant the motion to dismiss the second and third claims. The first claim plausibly alleges a breach of contract. But the second claim, which alleges breach of the covenant of good faith and fair dealing,

**MEMORANDUM DECISION AND ORDER - 1**

is duplicative. And the third claim fails to allege insurance bad faith. Plaintiff will be given leave to amend the bad-faith claim, as the deficiencies may be curable.

## BACKGROUND

On October 6, 2023, Tim Corder's minor daughter K.C. was riding as a passenger in a vehicle driven by John Barrutia. An underinsured drunk driver struck Mr. Barrutia's vehicle head-on, and K.C. sustained injuries. At the time of the accident, Mr. Corder was insured with Defendant Auto-Owners Insurance. The policy included UIM coverage for resident relatives, including when they occupied a vehicle not owned by the named insured.

During the relevant period, K.C. resided with Tim Corder and did not own an automobile. As such, she qualified as a "resident relative" under the policy. Mr. Corder sent Auto-Owners a demand for the policy limits. Within its "Claims Dashboard," Auto-Owners identified K.C. as a "1st party" claimant, noting that she had the same address as her parents and was "likely [a] resident relative." *Compl.* ¶ 16, Ex. A thereto.

Corder alleges that Auto-Owners breached the insurance contract by failing to pay UIM benefits owed due to K.C.'s injuries. He further alleges that Auto-Owners acted in bad faith by, among other things: (1) failing to pay these benefits; (2) failing "to acknowledge and implement reasonable standards for the prompt investigation of Plaintiff's claim"; (3) "[n]ot attempting in good faith to effectuate

MEMORANDUM DECISION AND ORDER - 2

prompt, fair and equitable settlement of Plaintiff's claim after liability became reasonably clear"; and (4) "[c]ompelling Plaintiff to institute litigation to recover amounts due under the Policy." *Am. Compl.* ¶ 25, Dkt. 6.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims under Rule 12(b)(6), the Court must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a complaint must allege enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The Court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact or legal conclusions couched as facts. *Id.* at 678-79; *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009).  Generally, a district court may not consider any materials

beyond the complaint when ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). If the court considers evidence outside the pleadings, it must convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

## ANALYSIS

### A.    Count 1: Breach of Contract

Auto-Owners argues that the first claim for relief should be dismissed because Corder failed to allege a breach-of-contract claim. The Court disagrees.

Under Idaho law, plaintiff must allege: "(1) that a contract exists; (2) a breach of the contract; (3) that the breach caused damages; and (4) the amount of those damages." *McOmber v. Thompson,* 572 P.3d 736, 750 (Idaho 2025). Corder's Amended Complaint ticks through these elements. It alleges that: (1) Tim Corder had an automobile insurance policy with Auto-Owners that was in effect at all relevant times; (2) the policy included UIM coverage; (3) the policy extended UIM coverage to a resident relative who did not own an automobile; (4) K.C. was Tim Corder's minor child, resided in his household, and did not own an

MEMORANDUM DECISION AND ORDER - 4

automobile; (5) K.C. was injured by an underinsured drunk driver; (6) Corder demanded UIM benefits under the policy; and (7) Auto-Owners failed to pay UIM benefits owed to K.C.

Auto-Owners says the Amended Complaint falls short because it does not identify the precise policy provision breached. But this is not a case in which a plaintiff merely alleges that an insurer "breached the policy" without identifying the coverage involved. Rather, the Amended Complaint plainly identifies the provisions at issue: the policy's provision for UIM coverage and the resident-relative provision.

In seeking dismissal, Auto-Owners highlights Paragraph 15 of the Amended Complaint, which alleges:

> Because the policy limits of Plaintiff did not compensate Plaintiff's minor child, K.C., for the damage suffered, demand was made for policy limits of Tim Corder's "UIM" coverage.

Dkt. 6, ¶ 15 (discussed in *Motion,* Dkt. 10-1, at 18). Auto-Owners says this particular sentence doesn't make sense. It is confusing. But, given the other allegations of the complaint, the Court presumes Plaintiff intended to say "Because the policy limits of *the underinsured motorist* did not compensate Plaintiff's minor child . . . ." Further, notwithstanding this isolated sentence, the Amended Complaint is plainly alleging a straightforward UIM claim: K.C. was injured by an

underinsured driver, available coverage was insufficient to compensate her injuries, and Corder sought UIM benefits under the Auto-Owners policy. At this stage, the Court must read the complaint as a whole and draw reasonable inferences in plaintiffs' favor. Viewed in that light, the Amended Complaint alleges a plausible breach-of-contract claim. The Court will therefore deny the motion to dismiss Count 1.

**B.     Count 3: Bad Faith**

### 1. The Amended Complaint Fails to Allege a Bad-Faith Claim

The Court will next resolve Auto-Owners' motion to dismiss Count 3, which seeks to allege bad faith on the part of the insurance company. To state a claim for insurance bad faith, a plaintiff must allege that: "(1) the insurer intentionally and unreasonably denied or withheld payment; (2) the claim was not fairly debatable; (3) the denial or failure to pay was not the result of a good faith mistake; and (4) the resulting harm is not fully compensable by contract damages." *Robinson v. State Farm Mut. Auto. Ins. Co.,* 45 P.3d 829, 832 (Idaho 2002); *see also Harmon v. State Farm Mut. Auto. Ins. Co.,* 394 P.3d 796, 804 (Idaho 2017).

Corder's Amended Complaint does not adequately plead each of these elements. The most obvious defect is the failure to plead harm not fully compensable by contract damages. Examples of extra-contractual damages in another case included claims that the insurance company's conduct caused

emotional distress, collection activity, damaged finances, damaged credit, liens against property, embarrassment, marital discord, and family turmoil. *See Weinstein v. Prudential Prop. & Casualty Ins. Co.,* 233 P.3d 1221, 1260 (Idaho 2010). Corder's amended complaint contains no comparable allegations. It simply alleges that Auto-Owners failed to fairly compensate him under the UIM coverage and that he was compelled to file suit to recover amounts due under the policy.

In addition to the failure to plead extra-contractual damages, the allegations supporting the bad-faith claim are also thin in other respects. The Amended Complaint alleges that a demand was made and that Auto-Owners refused to fairly compensate Plaintiff, but it provides little factual detail beyond that. It does not, for example, describe what was demanded, what information was submitted to Auto-Owners, what amounts Auto-Owners paid or refused to pay, or the reason Auto-Owners gave for any denial or delay (if any). In other words, the Amended Complaint, as drafted, essentially pleads the conclusion that Auto-Owners acted in bad faith without supporting factual allegations.

The Amended Complaint is also imprecise regarding who is asserting the bad-faith claim. In moving for dismissal, Auto-Owners assigns ownership of this claim solely to K.C., describing it as "K.C.'s bad-faith claim." This is consistent with the Amended Complaint's caption, which indicates that "Tim Corder" is

MEMORANDUM DECISION AND ORDER - 7

suing "on behalf of his minor child K.C." *See Am. Compl.*, Dkt. 6. But the body of the Amended Complaint contains allegations suggesting that Mr. Corder may also be suing on his own behalf. For example, paragraph 25 alleges that "Tim Corder and Defendant had a relationship of insured/insurer" and that Auto-Owners acted in bad faith in its dealings with "Plaintiff *and his relatives*." (emphasis added). Another paragraph alleges that Auto-Owners owed duties to "Plaintiff on behalf of his minor child, K.C." *See Am. Compl.* ¶ 21, Dkt. 6.

In light of these and similar allegations, and drawing reasonable inferences in Plaintiff's favor, the Court reads the amended complaint as attempting to assert claims by Tim Corder individually *and* on behalf of K.C. But the Court is not entirely sure, and the pleading should say so clearly. If Plaintiff chooses to amend Count 3, the revised complaint should plainly identify which plaintiff or plaintiffs is asserting the bad-faith claim and what extra-contractual damages each allegedly suffered.

In sum, although Count 3 is deficient as currently pled, Plaintiff may be able to cure the deficiencies. The Court will grant the motion with leave to amend.

### 2. *Van Tine* Does Not Require Dismissal Without Leave to Amend

The next issue related to the bad-faith claim is whether the Idaho Supreme Court's decision in *Idaho State Insurance Fund v. Van Tine*, 980 P.2d 566 (Idaho 1999) forecloses the claim. Auto-Owners says it does and, accordingly, urges the

MEMORANDUM DECISION AND ORDER - 8

Court to dismiss the claim without leave to amend. The Court is not persuaded.

### a. K.C. and Her Father May Pursue a Bad-Faith Claim

The first problem with this argument is that it is premised on the assumption that K.C. is the only plaintiff seeking to pursue the bad-faith claim. With that assumption in place, Auto-Owners says that, under *Van Tine,* K.C. cannot pursue the bad-faith claim because she did not contract with the insurance company—her father did. As just explained, however, it appears that Tim Corder may be seeking to assert claims individually and on behalf of his minor daughter, which would dispense with the issue. The Idaho Supreme Court's decision in *Weinstein v. Prudential Property & Casualty Insurance Co.*, 233 P.3d 1221 (Idaho 2010)— cited approvingly by both parties—indicates that both Mr. Corder and his minor daughter may properly pursue the bad-faith claim.

The *Weinstein* facts are similar to those before the Court. In that case, Sarah Weinstein, a minor daughter of the insured, was injured while riding as a passenger in a vehicle owned by her parents and driven by her mother. *Id.* at 1229. The accident was caused by an uninsured driver, and at the time of the accident, Sarah and her mother were insured under an automobile policy that provided uninsured motorist (UM) coverage.

After the insurer delayed paying UM benefits relative to Sarah's injuries, Sarah's parents sued the insurance company—both individually and as guardians

ad litem for Sarah. The case was tried to a jury, which found, among other things, the insurer committed bad faith in handling the UM coverage. *Id.* at 1231.

On appeal, the Idaho Supreme Court affirmed the judgment for compensatory damages and held that the insurer's delay in paying the UM claim supported the bad-faith claim. *Id.* at 1237–41. Notably, the Court did not suggest that the parents could not pursue the bad-faith claim merely because the policy benefits at issue related to their daughter's injuries. Nor did it suggest that Sarah's status as a non-procuring insured barred a bad-faith claim. Indeed, the court did not cite *Van Tine* (decided 11 years earlier) as a threshold obstacle.

Granted, it may be that nobody raised the argument Auto-Owners raises here. Still, though, if *Van Tine* had established that only the contracting party could sue for bad faith, *Weinstein* would have been an obvious case in which to apply that rule—particularly given that the *Weinstein* majority opinion drew a strong dissent from Justice Jones. The fact that neither the majority nor the dissent invoked *Van Tine* suggests that the Idaho Supreme Court did not understand *Van Tine* as announcing the broad, "procurement-only" rule Auto-Owners advances.

> b. ***Van Tine* Does Not Stand for the Proposition that Only Contracting Parties May Pursue Bad-Faith Claims**

This brings us to the second problem with Auto-Owners' reliance on *Van Tine*. In a nutshell, the Court is not persuaded that *Van Tine* created a categorical

rule that only contracting parties may pursue insurance companies for bad faith.

*Van Tine* is a worker's compensation case. Plaintiff Kirby Van Tine was injured during the course of his employment with the Idaho Department of Transportation. He pursued a bad-faith claim against the State Insurance Fund (SIF), which was his employer's worker's compensation surety. The main issue in the case was jurisdictional, as the district court concluded it lacked jurisdiction over Van Tine's bad-faith claim. The Idaho Supreme Court agreed, and its principal analysis concerned the Idaho Industrial Commission's exclusive jurisdiction over workers' compensation disputes. *See Van Tine,* 980 P.2d at 570-72. In a final passage, however, after clarifying that the Commission had exclusive jurisdiction of the bad-faith claim, the court offered up an alternative reason supporting its holding. It characterized Mr. Van Tine as a "third party claimant" and then observed that such claimants cannot maintain bad-faith claims, even outside the insurance context. *Id.* at 572 (reasoning that "because Van Tine is a third party claimant, even out of the context of the worker's compensation law, he would not be able to maintain a bad faith action against the SIF.")

Auto-Owners reads that passage to mean that in any situation involving an insurance contract, only the person who procured an insurance policy qualifies as a first-party claimant. The Court respectfully disagrees. The Court does not read *Van*

MEMORANDUM DECISION AND ORDER - 11

*Tine* as purporting to redefine first-party and third-party claims throughout Idaho insurance law.

Traditionally, first- and third-party claims are classified as such based on the nature of the claim being asserted—not on who procured the policy. A first-party claim typically involves an insured seeking direct benefits from the insurer for the insured's own loss. A third-party claim, by contrast, typically involves a claimant asserting liability against the insured, with the insurer's duties arising from its obligation to defend or indemnify the insured against that liability. *See generally White v. Unigard Mut. Ins. Co.,* 730 P.2d 1014, 1016 (1986) (generally describing first- and third-party claims). One commentator put it this way: "In the world of insurance, a first-party claim is a claim filed by an insured against his own insurer for 'damage to property or person'; whereas a third-party claim is 'made by a claimant against the insured for damages allegedly caused by the insured.'" Gary Langlois, Jr., *Kelly v. State Farm Fire & Casualty Company: Practical Effects Resulting from an Expansion of Insurers' Broad Good-Faith Duty*, 61 Loy. L. Rev. 799, 805 (2015) (citation omitted).

This understanding of first- and third-party claimants is reflected in the Idaho Supreme Court jurisprudence both before and after *Van Tine* was decided. In *Truck Insurance Exchange v. Bishara*, 916 P.2d 1275 (Idaho 1996), for example,

decided roughly three years before *Van Tine,* the Idaho Supreme Court explained that "[t]here is also a duty to act in good faith in so-called first party actions *where an insured is personally filing a direct claim for benefits with the insurer*." *Id.* at 1279. The *Bishara* Court contrasted first-party actions with third-party claims— those where a third party has made a claim against the insured. *Id.*

Another helpful case is *Graham v. State Farm Mutual Automobile Insurance Co.,* 67 P.3d 90, 91-93 (Idaho 2003), where the Idaho Supreme Court cited *Van Tine* in a true third-party setting. In that case, Matthew Graham and Sarah Mohr were involved in an auto accident. A jury determined that Mohr—who was insured by State Farm—was 75% at fault. Graham later sued State Farm for breach of the duty of good faith and fair dealing. The Idaho Supreme Court rejected the claim, holding that the "third parties cannot sue an insurance company for bad faith and unfair dealing after the third party has obtained a judgment against the policy holder." *Id.* at 92 (capitalization changed).

Additionally, as already noted, the Idaho Supreme Court decided *Weinstein* several years after *Van Tine*, where it addressed a bad-faith claim involving insured parents, their minor daughter, and UM benefits arising from the daughter's injuries without invoking *Van Tine* as a bar. 233 P.3d at 1237-41.

Finally, the Court notes that at least one Idaho state trial court has rejected

MEMORANDUM DECISION AND ORDER - 13

an argument similar to the one Auto-Owners advances here. In *Hunt v. Regence BlueShield of Idaho*, No. CV-02-01082, 2003 WL 22176010 (Idaho Dist. Ct. June 9, 2003), the court considered a bad-faith claim by a covered employee under a state health plan administered by Defendant Regence Blueshield of Idaho. Regence argued that there was no privity of contract between it and the plaintiff and, therefore, no bad-faith claim. *Id.* at *3. The court rejected the argument, describing *Van Tine* as a worker's compensation case in which the employee was a third party to the relationship between the Idaho Department of Transportation and the SIF. It then described the plaintiff before it as "a first party claimant in an insurance case." *Id.* at *5. State trial court decisions are not binding on this Court. But *Hunt* is persuasive and consistent with this Court's reading of *Van Tine.*

In sum, while Count 3 is inadequately pleaded and will be dismissed, the Court will not dismiss it with prejudice under *Van Tine*.

## C.    Count 2: Good Faith & Fair Dealing

The Court will dismiss Count 2 with prejudice, however, because it is duplicative. Count 2 alleges breach of the implied covenant of good faith and fair dealing. Idaho recognizes an implied covenant of good faith and fair dealing in contracts. A violation of that covenant is generally contractual in nature. *See McOmber,* 572 P.3d at 750 ("A violation of the implied covenant [of good faith and fair dealing] is a breach of contract.'") (citation omitted). Insurance bad faith,

by contrast, is a tort claim arising from the special insurer-insured relationship and requires additional elements not required for an ordinary implied-covenant claim, including the absence of a fairly debatable basis, the absence of a good-faith mistake, and harm not fully compensable by contract damages. *See Robinson*, 45 P.3d at 832.

Accordingly, the Court is not persuaded by Auto-Owners' broad assertion that an implied-covenant claim and a bad-faith claim are always the same claim. Still, though, Count 2 is duplicative as pleaded here. The Amended Complaint identifies no conduct supporting this claim that is distinct from the conduct underlying the breach-of-contract and bad-faith claims. To the extent Corder alleges that Auto-Owners failed to pay UIM benefits owed under the policy, that theory is encompassed within the contract claim. And to the extent Corder alleges unreasonable or bad-faith claim handling, that theory will be encompassed within the bad-faith theory, if adequately pleaded. Count 2 is thus duplicative and will be dismissed.

## ORDER

**IT IS ORDERED that** Defendant Auto-Owners Insurance's Motion to Dismiss (Dkt. 10) is **GRANTED IN PART and DENIED IN PART** as follows:

1.    Defendant's Motion to Dismiss Count 1, which alleges breach of contract, is **DENIED.**

MEMORANDUM DECISION AND ORDER - 15

2. Defendant's Motion to Dismiss Count 2, which alleges breach of the implied covenant of good faith and fair dealing, is **GRANTED** as this claim is duplicative. This claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

3. Defendant's Motion to Dismiss Count 3, which seeks to allege insurance bad faith, is **GRANTED**. This claim is **DISMISSED WITH LEAVE TO AMEND.** Plaintiff may file a Second Amended Complaint within 21 days of the entry of this Order. Any amended complaint shall clearly identify the party or parties asserting the bad-faith claim and shall plead facts supporting each element of that claim, including any damages allegedly not fully compensable by contract damages.

DATED: June 29, 2026

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 16